**FILED**

**Jun 16 2022**
**Clerk U.S. District Court**
**Northern District of Ohio**
**Cleveland**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Barbara Andersen | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | )  1:22-cv-00627 |
| Gregory A. Thompson personally and aka | ) |
| YouTube channel | ) |
| "Treasure Seekers Brutal Truth"; Treasure | ) |
| Seekers Brutal Truth LLC; Jeffrey Street; and | ) |
| Frank Beier | ) |

### FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF RELATIVE TO FEDERAL COPYRIGHT VIOLATIONS AND STATE-BASED TORTS

Barbara Andersen, pro se, hereby tenders this First Amended Verified Complaint as follows

### Background

1.      Barbara Andersen is a resident of Santa Fe, New Mexico.  Andersen is a licensed litigation attorney from Chicago, IL.  Andersen has been practicing, without discipline, since 1998.  Andersen's practice was as a real estate litigation attorney.  She currently is winding down her own law firm.  Prior to that, Andersen was a partner at two other firms, including the national law firm of Holland & Knight.  While at Holland & Knight, Andersen was recognized as a "rising star" and for her services to the indigent.

2.      Andersen is pro se for purposes of these proceedings here.

3.      Andersen moved to Santa Fe relative to the Forrest Fenn treasure hunt called the "Thrill of the Chase" (the "Chase").  Andersen began this process after she cracked the puzzle in early 2018 and found the general area in New Mexico.  Andersen then found the final area relative to the puzzle in the fall of 2019.  The puzzle solve is funny and nice. The way that one solves the puzzle is by catching Forrest Fenn in his lies about himself and generally.  The overt is

wrong and the subtle is correct. It is much like catching a lying deponent who slips in the small details of his/her story.

4.    Except on one occasion, no one was ever with Andersen while she was searching. No one was ever with or near Andersen when she found the final area in late 2019.

5.    In late 2020, Forrest Fenn announced that the "treasure" was "found" (not solved) under a "canopy of stars". Andersen was confused in that no one was with her and she had received odd text messages. Andersen did not know at the time that Fenn was contemplating retrieving the chest for her benefit and/or working on a project to announce the real solve.

6.    Andersen filed suit against the "unknown defendant" who had sent her text messages. Andersen then secured Jack Stuef, a spoof writer. In this same time frame, the post-find press releases conveyed her jokes from her years of searching. The post-find press releases also referenced the lack of a "Hollywood ending".  Andersen then realized that she was effectively being declared the winner/solver and that Jack Stuef was a stall tactic for the "Hollywood ending" yet to come.  Andersen came to realize that whoever sent her a text message was part of the team who was working on the "Hollywood ending" and was pranking her (rather than stealing the chest from her).

7.    As you solve the poem, Stuef is not the solver and is a prank. However, just as you solve the poem itself, one could determine the real solver (Andersen) via the statements of Stuef.  Upon information and belief, Stuef is simply a stall tactic being used by whomever is creating the "Hollywood ending" to the Chase to disclose the true location (in New Mexico… not Wyoming) and the true solver (Andersen).  A blurred photo of Andersen and her dog, Cupcake, are photo-shopped into the "found" photos of the chest.

8. Once Andersen realized what was going on, Andersen then voluntarily dismissed her suit against Stuef and has been waiting for almost two years for the true conclusion of the Chase.

9. Andersen has offered on many occasions and in many suits (including the domestic violence case against Thompson) to testify *in camera* as to the real solve location. Andersen repeats this offer to this Court. Andersen is perfectly happy to testify *in camera* outside of the presence of third parties/defendants if allowed as to the location and photos of the true solve area. Indeed, Andersen made this offer in the direct presence of Thompson and his attorney on the record in October 2021 at the domestic violence hearing. To date, no one has ordered Andersen to do so. Instead, the harassment by the desperate Netflix "wannabes", including but not limited to the defendants, continues.

10. In the interim, Andersen has been harassed extensively by the various YouTube blog self-declared "personalities". Their harassment of Andersen was incredibly malicious as they used their YouTube channels and blogs to harass and defame Andersen in their desire to catch the attention of documentarians that were circling for their Netflix agendas. Their objective was clear: try to cast themselves as heroes while trying to cast Andersen as a liar/thief and mentally ill.

11. These YouTubers would hide under fake names and harass Andersen in her real name. It was clear that they were trying to collectively destroy Andersen's name for their own self-interest and self-promotion.

12. Andersen has not named certain harassing persons herein in that they have relatively ceased their conduct after Andersen's demands to cease and desist. As noted in the

original complaint, Andersen was called terrible names and the subject of non-stop defamatory attacks against her years as a lawyer and as a mother.

13.    Thompson briefly dated Andersen after he approached her after she was on national television in June 2020 saying she had no idea what had happened to her and that she was the solver.

14.    After Andersen ended this brief relationship in late 2020/early 2021, Thompson went about his showboating for Netflix by harassing Andersen with non-stop defamatory, harassing and mocking commentary.   Thompson feigned his relevancy/popularity in the Chase by paying for clicks and upvotes for his YouTube channel (in violation of the Terms and Conditions)   He bragged that he was a "Howard Stern" character who was bringing the "brutal truth" to the YouTube Chase viewers.  Ironically, he then mocked Andersen as the real solver and would call her a liar, thief, unethical, etc. as part of his fake, harassing "show". He would also make similar defamatory and derogatory commentary relative to Andersen's litigation work, her divorce and her parenting.

15.    Andersen originally named Thompson to this suit and tried to stop him on multiple occasions with demands, a domestic violence case and the original complaint.  Instead of ceasing his conduct, Thompson solicited his co-bullies/"friends" to assist him harass Andersen in retaliation to Andersen's demands.  Thompson also has been desperately trying to secure a place for him on Netflix notwithstanding that his solve is absurd and he rode Andersen's coattails.

16.    Andersen had also repeatedly warned Thompson's "friends", Jeffrey Street and Frank Beier to cease and desist their similar YouTube/blog harassment of Andersen, their retaliation on behalf of Thompson, and their akin invasion into Andersen's private matters.  Like

Thompson, their harassment only escalated after Andersen filed a domestic violence action in New Mexico against Thompson in October 2021.

17.     In the domestic violence case, the trial court judge ultimately stated that she could not accept personal jurisdiction relative to Thompson's online harassment of Andersen under the long arm statute. Specifically, despite the fact that Thompson was engaged in tort conduct, the domestic violence court was not specifically listed in the New Mexico long arm statute.

18.     While denying personal jurisdiction, the Court advised Thompson that he and his YouTube friends cease harassing Andersen on YouTube so that Andersen did not bring her claims elsewhere.

19.     Instead of heeding the Court's advice, Thompson returned immediately to YouTube to continue his harassment and smear campaign of Andersen. Likewise co-defendants, Jeff Street and Frank Beier also assisted Thompson in their harassment of Andersen. On a daily basis, the defendants herein would harass Andersen on multiple channels, filing a frivolous TRO in Ohio against her and then announcing same on YouTube; go on YouTube advocating that viewers file complaints against Andersen's law license; by actually filing two frivolous complaints with the Illinois ARDC (which were dismissed); by stalking Andersen and contacting people in her personal life, and by posting pictures of her apartment on YouTube knowing that a YouTube viewer who appears to have mental health issues had threatened Andersen with physical harm. The Defendants also went through Andersen's litigation files, false arrest files and divorce litigation so as to cast Andersen as mentally ill, a liar, thief and to smear her name to their YouTube viewers.

20.     Upon information and belief, Beier was banned from a blog for his harassment. Upon information and belief, Street was banned twice from YouTube for his harassment.

Andersen only unearthed their real names recently. Prior to that, they were both hiding under fake troll account names. How many fake accounts they have is yet unclear.

21.     Andersen has made multiple demands to Street, Beier and Thompson to cease and desist their defamatory and harassing conduct. They have ignored Andersen's repeated demands and, instead, have continued to publicly harass and mock Andersen on YouTube in response to her demands and her litigation to further compound their harassment.

22.     Andersen is also making clear in this pleading that defendant, Treasure Seekers Brutal Truth LLC is a defendant to this litigation. Thompson fallaciously created this LLC after Andersen filed her Fall 2021 domestic violence case in an effort to frivolously try and shield himself personally from liability for his defamation and harassment of others on his YouTube channel. Upon information and belief, this company has no assets and has filed no tax returns. Further, upon information and belief, Thompson has not reflected the change of address for this corporation as required. Andersen's allegations herein refer to Thompson, individually, and Treasure Seekers Brutal Truth LLC collectively. (Collectively referred to as "Thompson".)

23.     To date, no counsel has approached Andersen relative to representing the LLC that Thompson fallaciously created to attempt to avoid liability herein.

24.     Upon information and belief, all of the defendants listed in this amended complaint are residents of Ohio and/or incorporated in the State of Ohio.

**Background Relative to Prior Defendant, YouTube**

25.     YouTube was previously a defendant in this litigation. Andersen was required to file suit in the State of California under the Terms and Conditions. Andersen resolved her litigation with YouTube in that they removed one of the most defamatory videos that Thompson put on the internet relative to Andersen's highly contested divorce litigation. Street and non-

6

party Bill Gorman (of Colorado) also extensively participated in that harassing video. Street and Gorman then went on to continue the harassment in further videos relative to Andersen's highly contested and expensive divorce and custody matters that stemmed from Andersen's false arrest by her ex-husband.

**Jurisdiction**

26.     This Court has personal jurisdiction over the defendants in that they are all, upon information and belief, residents of Ohio and/or incorporated within the State of Ohio.

27.     This Court has subject matter jurisdiction in that Count I *infra* raises a federal question under 28 U.S.C. § 1331.

28.     This Court also has subject matter jurisdiction 28 U.S.C. § 1332 in that Andersen is a resident of New Mexico and her claims exceed the jurisdictional limit of $75,000. As to the latter, the conduct of the defendants has (a) caused harm to the conclusion of the Chase; (b) caused harm to Andersen's name and reputation; (c) has impaired Andersen's business opportunities; (d) has caused harm to the forthcoming "Hollywood ending" that Andersen and the Forrest Fenn national and international readers have been awaiting; and (e) causes potential harm to the sale value of the chest (which remains held by counsel for Stuef in Santa Fe).

**COUNT I- DIRECTED AGAINST ALL DEFENDANTS
PURSUANT TO 17 U.S.C. § 502(a) FOR INJUNCTIVE RELIEF
AND STATUTORY DAMAGES PURSUANT TO 17 U.S.C. § 502 (C)**

29.     Andersen incorporates paragraphs 1 through 28 by reference.

30.     All of the Defendants engaged in a practice of harassing Andersen in violation of the Terms and Conditions of YouTube by copying and pasting materials from her channel onto their channel for the improper practice of harassing Andersen constantly on YouTube as part of a malicious, concerted smear campaign. Their conduct was in violation of the YouTube Terms

and Conditions and, further, Andersen's copyright rights as a user on YouTube. Andersen had two channels (one a temporary channel while she resolved her claims with YouTube) at all times relevant herein.

31.    All of the Defendants engaged in the practice of harassing and mocking Andersen for their self-interest and to further their ambitions in trying to secure Netflix positions. The conduct of the Defendants in mocking and harassing Andersen with her videos was multiple times a week. The Defendants also characterized their mocking, defamation and harassment of Andersen as a form of "comedy".

32.    Upon information and belief, the leader of this harassment was Thompson. Upon information and belief, he created multiple fake accounts to cut and past Andersen's videos for the improper purpose of harassment. Upon information and belief, he encouraged Street, Beier, Gorman, and an account user by the name of Galaxy to engage in the nonstop harassment of Andersen as part of his malicious smear campaign.

33.    In addition, account users Bat Daddy Mac and Granite Granny (also tied with Thompson's YouTube channel "Treasure Seekers Brutal Truth") would also engage in the improper practice of copying and pasting Andersen and other YouTube user videos for the improper practice of harassment. Upon information and belief, Bat Daddy Mac may be Thompson in that the pattern of harassment is similar in terms of his spelling/grammar errors (as was account "Frivolous Idiots" discussed *infra*). Andersen will be seeking discovery in an effort to clarify who are the additional persons who have been regularly harassing Andersen under fake YouTube user names.

34.    At one point in time, Street was banned twice from YouTube for his misconduct. However, he created two new accounts to return. He was able to return by creating new fake

accounts. However, his voice and conduct gave him away. Andersen stated many times on YouTube that his conduct was harassing and that he should cease same. He did not.

35.     Likewise, Beier hid under multiple fake identities. He hid under accounts "Shy Guy", "Walking Among Lions" and potentially others. Andersen repeatedly told Beier to cease and desist his conduct in the form of copyright complaints and via e-mail. He refused to do so and continued to carry on with his improper practice of copying and pasting Andersen's video for the improper purpose of mocking and harassing her.

36.     Instead of ceasing their harassing conduct, Beier and Street strangely demanded that Andersen file suit. They then continued on with their harassing videos and odd conspiracy theories relative to Andersen and others.

37.     Likewise, Thompson would engage in nonstop copyright infringement conduct relative to Andersen and other YouTube users surrounding the Chase. Thompson would also constantly copy her copy written songs/movie clips to his channel for his self-promotion. The theme of all of these videos was to mock others and call himself a tough guy hero (Kid Rock, wrestlers, tough guy, Cobra Kai characters, etc.) Thompson even would occasionally wear face paint of a wrestler as he mocked people on his "show". Thompson's version of entertainment was cruel humor at the expense of third parties, including but not limited to Andersen.

38.     Like Beier, Andersen told Thompson repeatedly to cease and desist his conduct. Like Beier, when he received a copywrite take down request, he filed a frivolous counter-strike claiming that his mocking videos were protected under the Fair Use exception. Thompson's refusal to heed Andersen's cease and desist communications and her take-down demands led to the filing of suit in New Mexico.

39.     Even now, the above copying and pasting Andersen's videos to their channel in blatant violation of the YouTube Terms and Conditions and Andersen's rights under same.

40.     Andersen is not seeking monetary, actual relief relative to any particular copywritten video from her channel under this Count.  Rather, Andersen is seeking injunctive relief and statutory damaged against the Defendants for their nonstop harassment of Andersen by copying and pasting her videos/channel content.

41.     Defendant Street also began joining in the practice of copying and posting from Andersen's page also for the purpose of harassment.

42.     This Court has the ability to order injunctive relief and statutory damages against the Defendants under Count I as discussed by the Eighth Circuit as follows:

> In concluding that it did not have jurisdiction to grant any injunctive relief under 17 U.S.C. § 502(a) 3 the district court concluded that Olan Mills did not present a live controversy. *See Olan Mills, Inc. v. Linn Photo*, 795 F. Supp. at 1429. We disagree. Section 502(a)  gives the district court the power to issue an injunction to prevent infringement of "a copyright." The power to grant injunctive relief is not limited to  registered copyrights, or even to those copyrights which give rise to an infringement action. *Pacific and Southern Co. v. Duncan*, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984), cert. denied, 471 U.S. 1004, 85 L. Ed. 2d 161, 105 S. Ct. 1867 (1985). While registration is required under section 411 of the Copyright Act in order to bring a suit for infringement, infringement itself is not conditioned upon registration of the copyright. See 17 U.S.C. § 408 [**9] (a) (registration is not a condition of copyright protection). Thus, a copyright holder can register a copyright and file suit after infringement occurs. The timing of registration only determines whether the copyright holder can recover statutory as opposed to actual damages. *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).  In our view, Olan Mills presented a live controversy when it requested a permanent injunction against future infringement of its unregistered copyrighted photographs. Therefore, the district court had jurisdiction to consider Olan Mills' request.  Courts have traditionally crafted broad injunctions to protect copyright holders, regardless of the registration status of the copyright. See Pacific and Southern, 744 F.2d at 1499. Injunctions have even prohibited infringement of works not yet in existence. *Id.* at 1499, n.17. (concluding the power of the district courts to issue injunctions is not limited to works already in existence but applies to future works as well). Faced with the

question of extending an injunction to include copyrighted material not included in the suit, the D.C. Circuit decided that HN9[ ] "where . . . liability has been determined adversely to the infringer, there has been a history of continuing infringement and a significant threat of future infringement remains, it is appropriate to permanently enjoin the future infringement of works owned by the plaintiff but not in the suit." *Walt Disney Co. v. Powell*, 283 U.S. App. D.C. 111, 897 F.2d 565, 568 (D.C. Cir. 1990). We agree with this statement of the law. When a copyright owner has established a threat of continuing infringement, the owner is entitled to an injunction regardless of registration. 897 F.2d at 567 (citing *Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 976 (9th Cir. 1981), rev'd on other 4 Section 504(c)(1) provides in relevant part: The copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, . . . in a sum of not less than $ 500 or more than $ 20,000 as the court considers just. grounds, 464 U.S. 417, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984)). Based on our review of the record, we believe the circumstances contemplated by 17 U.S.C. § 502(a) may exist in this case. Olan Mills presented evidence of Linn Photo's past infringement and of the substantial likelihood of future infringement. Olan Mills further asserted that it had no adequate remedy at law. Therefore, the district court must consider Olan Mills' petition for injunctive relief.

*Olan Mills Inc. v. Linn Photo Co.*, 23 F.3d 1345, *1010- (8th Cir. 1994).

43. Here, the conduct of the Defendants in constantly harassing Andersen in violation of her YouTube and independent copyright rights in her channel content was willful and malicious.

42. YouTube's outside counsel advised Andersen that they would enforce any order issuing injunctive relief without the need to include them as a party to this litigation.

Wherefore, Andersen asks for the following judgment against the Defendants under Count I:

a. Temporary and Permanent Injunctive Relief, including the banning of all YouTube channels by Thompson, "Treasure Seekers Brutal Truth", Beier and Street as well as any other social media accounts;

b.     A temporary and permanent injunction against the Defendants banning them from posting any materials relative to Andersen on any social media platform in the future;

c.     A temporary and permanent injunction against the Defendants to ban them from posting any of Andersen's YouTube materials or other materials on any social media platform;

d.     A temporary and permanent injunction against the Defendants to cease making any comment relative to Andersen in any regard on any social media platform generally and/or related to the Chase;

e.     A temporary and permanent injunction against the Defendants to cease making contact with any persons in Andersen's personal life, litigation matters and/or relative to her discussions with the media;

f.     An order directing the Defendants to destroy all video content by Andersen on YouTube;

g.     An order directing Defendants to cease copying and/or pasting Andersen's materials generally and relative to the Chase;

h.     A temporary and permanent injunction against the Defendants directing them to cease making any public commentary relative to Andersen in any regard;

i.     The issuance of an order to direct Defendants to stay away from all events and activities that Andersen is attending;

j.     The issuance of an order against the Defendants to have no personal contact with Andersen and/or related to Andersen in any regard;

k.  Statutory damages for the willful, malicious and concerted harassment by Thompson, Beier and Street; and

l.  Such other statutory alternative relief;

m.  Costs associated with this litigation; and

n.  Such other relief as this Court deems just and equitable.

**COUNT II- DIRECTED AGAINST ALL DEFENDANTS
INVASION OF PRIVACY – FALSE LIGHT**

43.  Andersen repeats and reincorporates by reference paragraphs 1 through 42 by reference.

44.  At all times relevant hereto the State of New Mexico recognized the tort of invasion of privacy.

45.  Andersen filed a lawsuit relative to the strange end/prank messages that she received prior to the "find" announcement. Andersen eventually realized that the prank end, which was consistent with how one solves the puzzle, was recognizing Andersen as the solver and that the Fenn family or persons unknown were working on something to the effect of a "Hollywood ending" (what that means is yet to be clarified).

46.  In response to same, Andersen was attacked by a variety of YouTube persons who began to attack Andersen. In addition to mocking her with her videos as noted *supra*, they also did so by invading and stalking in her personal matters that were irrelevant to the Chase. The intent was to defame Andersen by smearing her name by mischaracterizing personal matters or by trying to solicit comments by persons that Andersen no longer associates with (ex-husband, prior law firms, ex-boyfriends, etc.).

47.  Defendants hereto engaged in non-stop invasions of Andersen's privacy and, further, went regularly on YouTube to defame Andersen with same.

48. Indeed, Thompson made it clear in June 2022 that he was defaming Andersen and stated to Andersen and his public on his YouTube to "f**k" off.

49. The Defendants engaged in the following misconduct:

a. Thompson and Street went through Andersen's divorce file for several hours on Easter 2020 making disparaging commentary relative to same and Andersen's parenting/mental health;

b. All of the Defendants characterize Andersen's lawsuit filed relative to the Chase as evidence of Andersen being a "liar" and a "thief";

c. Beier filed a frivolous e-petition listing Andersen as a person who should be investigated by the Attorney General as a paid actor or, alternatively, part of a fraud scheme with the Fenn family;

d. All of the Defendants have characterized Andersen's litigation matters (including this) as an extortion tactic and an abuse of Andersen's law license;

e. Beier and Thompson have accused Andersen as being a paid actor by the Fenn family and on the "payroll" of the Fenn family;

f. All of the Defendants have publicly accused Andersen as acting unethically under the Illinois Rules of Professional Conduct;

g. All of the Defendants harassed Andersen publicly relative to her filing of a domestic violence case against Thompson in New Mexico;

h. All of the Defendants harassed Andersen with frivolous letters to the Illinois ARDC and/or publicly encouraged persons to take such frivolous retaliation against Andersen;

i. All of the Defendants have publicly told persons of a frivolous filing of an ex parte TRO against Andersen;

14

j.     All of the Defendants have engaged in stalking Andersen's law license and unrelated litigation files in order to mischaracterize same to their YouTube viewers;

k.     All of the Defendants have stalked Andersen's police reports so that they can stalk Andersen and mock Andersen on YouTube ;

l.     All of the Defendants have encouraged each other and their viewers to further stalk Andersen's private matters and/or harass people in Andersen's personal life;

m.     Thompson and Street both published pictures of Andersen's apartment building on YouTube as an implicit threat against her; and

n.     Upon information and belief, all of the Defendants attempted to contact Andersen's ex-husband and persons in Andersen's personal space in a further effort to harass and defame Andersen.

50.     Upon information and belief, Thompson was also warned to cease and desist his stalking and harassment of the Stuef family by Michigan police.

51.     Andersen and, upon information and belief, the Stuef family have advised the Defendants to cease their stalking and invasive conduct. Defendants have ignored same.

52.     The domestic violence court in New Mexico also advised Thompson to cease and desist his stalking and harassment of Andersen and, further, to advise the co-Defendants herein (among others) to cease and desist their conduct.

53.     The Defendants have willfully and maliciously refused to cease their conduct. Instead, they have escalated their misconduct after the domestic violence court's October 2021 comments.

54.     At all times relevant hereto, New Mexico has recognized the tort of invasion of privacy.

55.     Here, the Defendants have violated Andersen's right to the invasion of privacy by: (a) stalking Andersen and her private affairs; (b) publicly mischaracterizing her private matters on YouTube in their non-stop smear campaign against her; (c) making false allegations against Andersen as to her ethics, law practice, parenting and matters that they would have no competency on opining; and (d) casting Andersen in a false light so as to cause harm to the forthcoming, true conclusion of the Chase and the fact that Andersen is the true solver of the puzzle.

56.     The Defendants engaged in their non-stop smear campaign of Andersen so as to self-promote and showboat for documentary companies that were speaking to searchers. The Defendants saw/heard these companies speaking to Andersen and attempted to defame Andersen on YouTube with the hope that they would be cast in documentaries, etc. In other words, the Defendants knowingly and maliciously publicly defamed Andersen so as to usurp opportunities from her for themselves even though they were/are completely irrelevant to the conclusion of the Chase and have nothing to do with Andersen as the true solver of the puzzle.

57.     Under the tort of invasion of privacy, Andersen is entitled to request that this Court issue an order for injunctive relief and monetary damages. In light of the refusal of the Defendants to cease and desist their conduct despite repeated demands to stop, Andersen requests that this Court consider both in that Andersen has been subjected to concerted, non-stop harassment by the Defendants on various social media platforms since approximately June 2020 (with Thompson beginning around the winter of 2020/2021..

58.     It is clear that the Defendants are trying to ruin the forthcoming real end to the Chase via continued non-stop attacks against Andersen and the Fenn family on various social

media platforms.  As such, Andersen also asks for a temporary and permanent injunction against the Defendants herein.

59.     The chest value and the business opportunities available to Andersen exceed $75,000.  The treasure chest value, which is being held by counsel, is in the millions of dollars.

Wherefore, Andersen asks for the following judgment against the Defendants under Count II:

a.  Temporary and Permanent Injunctive Relief, including the banning of all YouTube channels by Thompson, "Treasure Seekers Brutal Truth", Beier and Street as well as any other social media accounts;

b.  A temporary and permanent injunction against the Defendants banning them from posting any materials relative to Andersen on any social media platform in the future;

c.  A temporary and permanent injunction against the Defendants to ban them from posting any of Andersen's YouTube materials or other materials on any social media platform;

d.  A temporary and permanent injunction against the Defendants to cease making any comment relative to Andersen in any regard on any social media platform generally and/or related to the Chase;

e.  A temporary and permanent injunction against the Defendants directing them to cease making any public commentary relative to Andersen in any regard;

f.  The issuance of an order to direct Defendants to stay away from all events and activities that Andersen is attending;

g.    The issuance of an order against the Defendants to have no personal contact with Andersen and/or related to Andersen in any regard;

h.    Monetary damages for the damage to Andersen's reputation and the attempt to smear the end of the Chase and Andersen's role as the real solver of the puzzle;

i.    Punitive damages for the malicious and deliberate effort to smear the end of the Chase and Andersen's reputation on multiple social media platforms;

j.    Costs associated with this litigation; and

k.    Such other relief as this Court deems just and equitable.

## COUNT III- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS DIRECTED AGAINST ALL DEFENDANTS

60.    Andersen repeats and reincorporates by reference paragraphs 1 through 59 by reference.

61.    At all times relevant hereto the State of New Mexico recognized the tort of intentional infliction of emotional distress.

62.    Since approximately June 2020, Street and Beier began harassing Andersen on multiple internet sites. In approximately late 2020/early 2021, Thompson joined in on the harassment. Independently and collectively, the Defendants would constantly post YouTube harassing Andersen and the Forrest Fenn YouTube bloggers/vloggers/searchers with mocking, daily videos.

63.    The Defendants would constantly post videos accusing Andersen of being a "thief" and "liar"; unethical; a poor attorney; mentally ill; a "stalker"; violating the Rules of Professional Conduct; disgusting physical and/or sexual references. The Defendants would also

go on multiple hour "shows" discussing Andersen's personal life, her divorce, her parenting, her legal matters and other private facts in a false light so as to smear her name.

64.    The Defendants were repeatedly directed to cease their conduct.    Instead of heeding to Andersen's demands, they simply escalated the conduct.

65.    The Defendants then taunted Andersen's threats to file an amended complaint as a further form of entertainment.  Beier told Andersen on his YouTube channel to "bring it b**ch". Street would taunt the threat by saying similar remarks and to "s**t or get off the pot".  They would also mock Andersen repeatedly telling them and this Court (in the form of a verified pleading and *in camera* testimony offers) that she was the solver by stating that Andersen (despite practicing since 1998) that she was a perjurer.   Upon information and belief, all of the Defendants then solicited additional third parties (such as non party account "Lou Lee Belle", "Chasing Indy", "Galaxy", "Kyle Sandufuss", "Suzie Fennhaven", "Bat Daddy Mac", "Frivolous Idiots", "Bill Gorman) to also independently harass Andersen on YouTube and relative to her law license and personal affairs.

66.    After the New Mexico court denied personal jurisdiction pursuant to the arguments of Thompson's counsel, Thompson then filed a frivolous ex parte TRO against Andersen in Ohio in retaliation to this suit.  Thompson then broadcast same over YouTube with the co-Defendants.  In his commentary, it was clear that Thompson knowingly filed a frivolous TRO in retaliation and, further, broadcast same on YouTube with the co-defendants to further harass Andersen.  The Defendants boasted and laughed saying to the effect of "welcome to Ohio" in a sarcastic fashion.  Andersen was never served with any purported TRO.  When Andersen called the New Mexico Sheriff and a few courts in Ohio, they could not locate any record of the case such that Andersen could vacate same.

67.     The Defendants engaged in a two-year smear and harassment campaign against Andersen as a form of harassment/showboating.    Specifically, Thompson's agenda was (a) to ride Andersen's national media coat-tails to try and get himself noticed by the various (self-described) documentarians who were trying to put together Netflix shows.    After Andersen ended her relationship with Thompson, Thompson then would mock and harass Andersen in an effort for the national media to shift focus from Andersen and onto himself.    In addition, Thompson was trying to bully Andersen off of YouTube so that he, alone, would be the face that the Netflix documentarians would see.

68.     Thompson and the co-Defendants also would publicly go online encouraging their YouTube audiences to attack Andersen's law license and put her on a petition requesting that she be investigated by the Attorney General.

69.     Andersen has no idea who any of the Defendants are except for briefly dating Thompson in 2020. None of the Defendants were ever privy to Andersen's solve details and/or saw any of her detailed pictures relative to her years of searching. As such, there was no good faith basis to make any public allegations in any regard, let alone on YouTube, suggesting that Andersen was (a) not the solver; (b) not part of a fraud scheme; and/or (c) anyhow unethical.

70.     Thompson would regularly encourage the co-Defendants to also harass Andersen on his own channel and through their independent channels in a similar fashion.

71.     The constant, *ad hominem* attacks by the Defendants, collectively and independent, was deliberate and malicious.    The clear objective of the Defendants was to (a) smear Andersen and her real name/reputation and (b) self-promote themselves for purposes of trying to usurp opportunities belonging to Andersen as the real solver of the Forrest Fenn puzzle

while Andersen waited for those (persons unknown to Andersen) working on the "Hollywood ending" completed their task.

72.     The conduct of the Defendants was very wearing on Andersen as she watched constant *ad hominem* attacks and other attacks against her name/reputation on multiple internet sites. Andersen suffered from periods of depression, resorted occasionally to drinking alcohol, and gained weight by these Defendants.   It was particularly tiring and stressful in that Andersen attempted to have YouTube enforce their Terms and Conditions (which prohibited bullying, copyright infringement and invasion of privacy) and they did nothing to ban the Defendants.

73.     It was also particularly harassing in that the Defendants further harassed Andersen by upon information and belief engaging in the further acts of misconduct: stalking her apartment; posting Andersen's apartment online, issuing FOIA requests to try and trace her movements, trolling websites relative to her law license; calling people in her personal life (ex-husband, neighbors, former acquaintances) and threatening to engage in further, future harassment of additional acquaintances and people formerly in her personal life (ex-boyfriend).

74.     Jeff Street hid under a fake name/account for almost a year and a half before Andersen found his real name/address.  Frank Beier hid under multiple fake names/accounts until he filed a counterstrike to Andersen's YouTube copyright complaint which disclosed his real name/address.  In other words, these people sadistically enjoyed harassing real people such as Andersen while their real names/reputations were unknown to those following the YouTube channels.

75.     Defendants, in lieu of filing litigation, attempted to also learn the "truth" relative to the end of the Fenn treasure hunt by stalking the parents of Jack Stuef in addition to stalking

Andersen. They also threatened to stalk the homes of the Fenn family until they received backlash by the YouTubers.

76. Upon information and belief, Thompson also threatened and harassed several other searchers with his online videos and threats.

77. In the interim, Thompson publicly bragged that he did not listen to the "boring" book discussion videos/songs by Andersen. Had he done so, he would have been able to potentially figure out how to solve the riddles and the "final area". Instead, Thompson and the Defendants wasted time to harass and defame Andersen so as to fulfill their real objective of becoming national television celebrities at Andersen's expense. The conduct of Defendants was malicious, purposeful, vain and done out of self-interest and promotion.

78. In that the Defendants were repeatedly warned to stop his harassment and that he mocked same, Andersen asks this Court to consider both injunctive relief and monetary damages against them.

79. As the real solver, Andersen a monetary award against the Defendants for the damage to her reputation in this multi-million dollar treasure hunt by their constant malicious, defamatory and harassing online conduct in a approximate two year smear campaign.

Wherefore, Andersen asks for the following judgment against the Defendants under Count III:

a. Temporary and Permanent Injunctive Relief, including the banning of all YouTube channels by Thompson, "Treasure Seekers Brutal Truth", Beier and Street as well as any other social media accounts;

b.  A temporary and permanent injunction against the Defendants banning them from posting any materials relative to Andersen on any social media platform in the future;

c.  A temporary and permanent injunction against the Defendants to ban them from posting any of Andersen's YouTube materials or other materials on any social media platform;

d.  A temporary and permanent injunction against the Defendants to cease making any comment relative to Andersen in any regard on any social media platform generally and/or related to the Chase;

e.  A temporary and permanent injunction against the Defendants to cease making contact with any persons in Andersen's personal life, litigation matters and/or relative to her discussions with the media;

f.  An order directing the Defendants to destroy all video content by Andersen on YouTube;

g.  An order directing Defendants to cease copying and/or pasting Andersen's materials generally and relative to the Chase;

h.  A temporary and permanent injunction against the Defendants directing them to cease making any public commentary relative to Andersen in any regard;

i.  The issuance of an order to direct Defendants to stay away from all events and activities that Andersen is attending;

j.  The issuance of an order against the Defendants to have no personal contact with Andersen and/or related to Andersen in any regard;

k.   Monetary damages for the willful, malicious and concerted harassment by Defendants;

l.   Costs associated with this litigation; and

m.   Such other relief as this Court deems just and equitable.

## COUNT IV DEFAMATION
### (PLEAD IN THE ALTERNATIVE TO COUNT III)
### DIRECTED AGAINST ALL DEFENDANTS

80.   Andersen repeats and reincorporates by reference paragraphs 1 through 79 by reference.

81.   This Count is plead in the alternative to Count III in that the State of New Mexico provides for alternative recovery under New Mexico Statute 41-71-1.

82.   At all times relevant hereto, the State of New Mexico recognized the tort of defamation.

83.   The Defendants collectively and independently went on a smear campaign of Andersen on many internet forums.  Thy have falsely accused Andersen as follows to a wide national audience under her real name:

a.   Filing false and frivolous litigation;

b.   Attempting to steal the Fenn treasure;

c.   Not being the solver;

d.   Having mental health issues;

e.   Being a "liar" and a "thief" and a "perjurer";

f.   Being a paid actor;

g.   Violating the rules of professional conduct;

h.   Being an actor retained by the Fenn family;

i.   Being on the Fenn payroll to cover-up an alleged fraud scheme;

j.   The subject of a TRO order that Thompson secured in Ohio even though he knew same was frivolous;

k.   Going through Andersen's litigation matters so as to suggest that she is litigious, a perjurer, an extortionist, and a con.

84.   Defendants encouraged YouTube viewers to attack Andersen with ARDC complaints; sign a fraud petition against her; harass her on YouTube and otherwise; and regularly attack her on their programs.

85.   Defendants also encouraged their viewers to also contact people in Andersen's personal life and interfere with her unrelated personal matters as a form of additional harassment.

86.   The conduct of the Defendants was malicious and constant.

87.   Despite repeated warnings, Defendants refused to stop their conduct.

88.   Defendants had a financial and personal agenda in their harassment of Andersen. Specifically, they were trying to promote themselves at the expense of others as a form of showboating.  Defendants were jealous of Andersen's attention in the national spotlight and wanted to usurp those opportunities for themselves.  Thompson would make comments to the effect that he was going to be in movies and documentaries for his show and "detective" work relative to Andersen and others.

89.   Beier would also interject absurd conspiracy theories relative to Andersen and others. For some time, he told viewers that Andersen was a paid actor who was strangely tied to Barbara Anderson of Mission Impossible (different spelling) and that her birthday was a road in New Mexico near his search area.  Beier harassed Andersen on multiple forums with his

conspiracy theories and allegations that Andersen was part of some fraud scheme. It was Beier who created a petition listing Andersen as a suspect person engaging in a fraud scheme.

90. Beier even went to the extreme of suggesting that a searcher who had passed away was still alive.

91. None of the allegations relative to Andersen by the Defendants were true.

92. Andersen was at all times relevant hereto the real solver of the Fenn puzzle. Andersen has publicly stated as such on multiple occasions and that she is waiting for the real conclusion to the Chase. Andersen found, without the assistance of anyone, the general location in early 2018. Later Andersen found that final area in late 2019.

93. Defendants are attempting to ruin the end of the Chase by their malicious commentary, harassment and gossip relative to Andersen.

94. Defendants are also taking revenge on Andersen for their own personal benefit in that they think that their "Howard Stern" routine will lead them to fame.

95. Defendants are attempting to drive all of the YouTubers off of YouTube with their constant bullying of Andersen and others.

96. As the real solver of the Fenn treasure puzzle, Andersen has the potential to make significant revenue in that this was the "unsolvable" puzzle with a chest worth millions. As such, Andersen seeks injunctive relief such that the Defendants cease and desist their conduct so as to not cause further harm to Andersen's name and reputation.

97. In addition, Andersen seeks monetary damage against the Defendants in that their constant harassment of Andersen has damaged her reputation as the real solver of the Fenn puzzle.

98.     Indeed, Thompson approached Andersen in June 2020 (not vice versa) in June 2020 when she was trying to figure out what happened to her relative to the Chase ending and her public statements that she was the real solver of the Fenn puzzle.

99.     Thompson was also aware of Andersen's litigation relative to the ending and the fact that Andersen voluntarily dismissed Jack Stuef, a spoof writer, from a litigation matter (a) after she realized that he was consistent with how one solves the puzzle itself and (b) Stuef was telling Andersen's jokes in the post-find press released.

100.    The Defendants were also aware that Andersen publicly stated that the spoof ending was due to the fact that, upon information and belief, parties were working on a "Hollywood ending" relative to the real solve and Andersen.

101.    In that Thompson and the co-Defendants escalated their misconduct after Andersen's demands to stop, Andersen is asking for monetary damage to compensate her for damage to her reputation.   Andersen is also asking for monetary compensation in that the domestic court of New Mexico, while denying jurisdiction, advised Thompson that he and his YouTube "friends" should stop harassing and defaming Andersen.

Wherefore, Andersen asks for the following judgment against the Defendants under Count IV:

  a. Temporary and Permanent Injunctive Relief, including the banning of all YouTube channels by Thompson, "Treasure Seekers Brutal Truth", Beier and Street as well as any other social media accounts;

  b. A temporary and permanent injunction against the Defendants banning them from posting any materials relative to Andersen on any social media platform in the future;

c.  A temporary and permanent injunction against the Defendants to ban them from posting any of Andersen's YouTube materials or other materials on any social media platform;

d.  A temporary and permanent injunction against the Defendants to cease making any comment relative to Andersen in any regard on any social media platform generally and/or related to the Chase;

e.  A temporary and permanent injunction against the Defendants to cease making contact with any persons in Andersen's personal life, litigation matters and/or relative to her discussions with the media;

f.  An order directing the Defendants to destroy all video content by Andersen on YouTube;

g.  An order directing Defendants to cease copying and/or pasting Andersen's materials generally and relative to the Chase;

h.  A temporary and permanent injunction against the Defendants directing them to cease making any public commentary relative to Andersen in any regard;

i.  A temporary and permanent injunction against the Defendants directing them to cease making any public commentary relative to Andersen in any regard;

j.  The issuance of an order against the Defendants to have no personal contact with Andersen in any regard, including but not limited to her future activities relative to the Fenn treasure hunt and its conclusion;

k.  Monetary damages for the willful, malicious and concerted harassment by Defendants;

l.  Costs associated with this litigation; and

m.    Such other relief as this Court deems just and equitable.


Respectfully submitted,

BARBARA ANDERSEN

/s/ Barbara Andersen

By: _____

Barbara Andersen
3201 Zafarano, Suite C
Box 259
Santa Fe, NM 87507
bandersen@andersen-law.com (IL law e-mail)
or barbandersen323@yahoo.com

## CERTIFICATE OF SERVICE

I, Barbara Andersen, an attorney, hereby certify that I caused a true and correct copy of the attached **AMENDED COMPLAINT** to be served upon the following parties this on June 13, 2022 on via U.S. Mail:

Greg Thompson and Treasure Seekers Brutal Truth LLC
P.O. Box 375
Berea, Ohio 44017

Frank Beier
8368 Tawa Creek
Findlay, Ohio 45840

Jeffrey Street
201 Jefferson St.
Marion, OH 43302


_/s/ Barbara Andersen